BRECKENRIDGE (PETERS v.). See Case No. 11,030.

---

## Case No. 1,826.

BREED v. PROVIDENCE WASHINGTON INS. CO.

[17 Blatchf. 287.] [1]

Circuit Court, E. D. New York. Nov. 10, 1879.

MARINE INSURANCE—THE POLICY—CONSTRUCTION.

Clauses in an open uniform canal cargo policy of insurance construed, in such manner as, the insurance being to the amount of $8,000 on goods worth $20,000, and the loss being $9,378.01, the liability of the insurer was held to be only for two-fifths of the loss, and not for the $8,000.

[At law. Action by Orson Breed upon a policy of marine insurance. Judgment for defendant.]

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

Birdseye, Cloyd & Bayliss, for plaintiff.
W. W. Hoppin, Jr., for defendant.

BENEDICT, District Judge. This is an action upon a policy of insurance, tried by consent before the court, without a jury. The policy is styled an open uniform canal cargo policy. By its provisions the defendants agreed with the plaintiff to insure him for such amounts, upon such goods, during such voyages or trips, as should, with the approval of the assurers, be endorsed on the policy, or in a book kept for that purpose, against the perils of the seas, canals, rivers and fires, and all other perils and losses that might happen to the goods on the voyage designated. In accordance with the terms of the policy, endorsements were thereafter made and approved, in a book kept for that purpose, so as to effect insurance to the amount of $8,000, upon goods worth $20,000, shipped upon the canal boat Pallas, for a voyage described. During that voyage, a loss amounting to the sum of $9,378.01 was suffered by the insured, whereupon he brings this action upon his policy, to recover the sum of $8,000. The underwriters deny their liability for so great an amount, and contend that the amount of their liability is limited to two-fifths of the loss suffered. The determination of the controversy requires a construction of the policy, and, more particularly, a determination of the effect to be given to the 9th, 10th and 15th of the 21 clauses into which the policy is divided. The 9th clause is as follows: "Immediate notice of the occurrence of all losses shall be given to the said assurers by the insured; and, within thirty days from the time the same may happen, the said insured shall deliver to the said assurers as particular an account thereof as the nature of the case will admit, stating the causes, if known, the extent thereof, and the nature of the interest in the property, also, what other insurance or insurances, if any, there was on said property at the time of said loss; which statement shall be in writing, signed by the assured, and verified by his and their oath; and so much of said statement as relates to the cause, nature and extent of said loss or damage shall be verified, also, by the oath of the master of said boat or vessel, or of some other person or persons having immediate charge thereof at the time the same did happen, otherwise the said assurers will not be liable under this policy; and the amount of loss shall be ascertained by the opening of packages, when necessary, by a competent person, and separating the sound from the damaged portion, the said assurers being liable for the loss on the damaged portion only, which shall be ascertained by appraisement by disinterested persons, or by sale at auction, as the said assurers may prefer." The 10th clause is as follows: "The said loss or damage to be estimated according to the true and actual cash value of the said prop-

erty at the place of destination, on the day of the disaster, and, on the property not forwarded to its destination, the said loss or damage to be ascertained in the same manner, and the freight from the place of disaster to the place of destination deducted, and the said assurers will pay such proportion of the said loss as the amount thereby insured bears to the sound value of the property so insured. In all cases of loss or damage there shall be deducted, in lieu of average, the sum of seventy-five dollars, on losses on grain and general merchandise, and fifty dollars on flour and other cargoes, excepting salt, on which the average shall be one hundred dollars." The 15th clause is as follows: "And the said assurers do hereby undertake and agree to make good and satisfy unto the said insured all such loss or damage on the said goods, merchandise or country produce, so laden as aforesaid, not exceeding in amount the sum insured thereon, as shall happen or arise from any of the aforesaid causes or casualties, not excepted, to be paid within sixty days after notice and proof of the loss and interest therein shall have been made by the insured."

The plaintiff claims that clause 10 is intended to apply to cases where insurance is effected in other companies, and to no other cases, and has no effect in a case like this, where there was but a single policy; and he contends that the 15th clause determines the extent of the defendants' liability in this instance, and that, by virtue thereof, they are liable for the whole $8,000, the amount of the loss having exceeded that sum. On the part of the defendants the contention is, that the 10th clause of the policy must be considered in all cases, for the purpose of ascertaining the extent of the underwriters' liability, and has, in this instance, the effect to limit the defendants' liability to such a portion of the loss as the sum insured by the policy, viz., $8,000, bears to the sound value of the property insured, viz., $20,000. Upon this question, my opinion is in favor of the defendants' construction of the policy. I am unable to find anything in the policy that will warrant confining the effect of the 10th clause to cases where other insurance shall have been effected. The clause contains no language from which an intention so to limit its effect can be inferred. On the contrary, the language is general, and the subject-matter such as to indicate that it was intended thereby to declare the extent of the underwriters' liability in all cases of loss. The plaintiff would make the clause read: "In case of other insurances, the said assurers will pay such proportion of the loss as the amount insured by all policies bears to the sound value of the property insured." But, there is no language that limits the provisions

to the case of other insurances, and the word "thereby" cannot be supposed to be used to signify "by all policies." As here used, the word "thereby" is given a natural significance, by considering it to be equivalent to "in that way," viz., by means of endorsements made on the policy or in the book, with the approval of the underwriters, according to the method prescribed in the commencement of the policy. So understood, the language of the 10th clause is given a natural effect, and the 10th and 15th clauses are in harmony, for the words "such loss," used in the 15th clause, refer back to the language of the 10th clause, for the extent of the liability, and the sixty days' limit, contained in the 15th clause, indicates the object of that clause. The provision of the 10th clause, if read as the plaintiff contends, would be an absurd provision, for it would permit the insured, by taking out other policies, to increase the amount of liability under the policy, without paying any increased premiums, inasmuch as, according to the plaintiff's reading, the greater the amount of all the policies the greater the liability created by this clause. It is, indeed, true, that such a result would conflict with other subsequent clauses in the policy, but the clause, by itself, if understood as the plaintiff contends, would produce that result, and it cannot be supposed to have been the intention to insert an absurd provision, of such a character, in the policy, whether cured by other provisions or not.

The amount of premium furnishes no support to the plaintiff's contention. It was entirely possible, under the policy, that underwriters should be liable for the whole $8,000, as, for instance, in case the sound value of the property insured had been $8,000; and it was within the plaintiff's control to limit the shipment to that amount. So, also, the liability would be $8,000, if the value of the shipment were $20,000, in case the loss had been total.

My conclusion, therefore, is, that the terms of the policy do not permit the constructions for which the plaintiff contends, and that the effect of the provisions in the policy is to make the owner co-insurer with the underwriters, and to limit the liability of the underwriters, in this case, to two-fifths of the loss. In accordance with this conclusion, there will be judgment for the plaintiff in the sum of $1,746.25, that being the two-fifths of the loss, less certain deductions that both sides agree are proper to be made. Let there be judgment accordingly.